UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

GREENLAND ASSET MANAGEMENT
CORPORATION, a British Virgin Islands
corporation, and PEACE ASSET MANAGEMENT
CORPORATION, a British Virgin Islands
corporation,

            Plaintiffs,

    v.

TRANSFER ONLINE, INC., an Oregon
corporation,

            Defendant.

Case No. 3:24-cv-00531-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge.

### FINDINGS

Plaintiffs Greenland Asset Management Corporation and Peace Asset Management Corporation both own shares of non-party MicroCloud Hologram, Inc. According to plaintiffs, these shares are restricted and cannot be sold on the open market without MicroCloud's consent, which plaintiffs have tried and repeatedly failed to secure. Now, plaintiffs have filed this suit against defendant Transfer Online, Inc., the transfer agent for MicroCloud, asserting that defendant owed plaintiffs a legal duty to remove a restrictive legend from their shares so they

1 – FINDINGS AND RECOMMENDATIONS

could sell the shares despite MicroCloud's refusal to consent. Currently pending is defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) plaintiffs' claims under O.R.S. 78.4010 (Oregon's version of section 8-401 of the Uniform Commercial Code (U.C.C.)), federal securities law, and Oregon common law. ECF 14. As explained below, plaintiffs have failed to allege facts showing that defendant owed them any such duty under Oregon or federal law.[1] Therefore, defendant's motion to dismiss should be granted.

I.     Background

The following facts are taken from the complaint and are, for the purposes of this motion, assumed to be true. Plaintiff Greenland acquired 1,708,000 shares in non-party MicroCloud through a series of, roughly speaking, mergers and other transactions related to MicroCloud's initial public offering in June of 2021.[2] Greenland bought these shares through a private placement, meaning that the shares were "exemp[t] from registration under the Securities Act of 1933" and thus Greenland "could not sell these shares in the public market" until MicroCloud "registers these shares with the SEC" or the restrictions on the shares "are removed pursuant to the [Securities and Exchange Commission] Rule 144[.]"[3]

There are apparently two so-called subscription agreements by which Greenland acquired its shares, and both of these agreements contain provisions restricting the shares' transfer. *See*

---

[1] Plaintiffs did not request leave to amend, nor provide any indication as to how they might amend the complaint to fix any of the alleged deficiencies defendant identified through its motion.
[2] *See* Compl. ¶¶ 7–10, 13, ECF 1. Although defendant does not directly dispute the total number of shares that Greenland acquired, the motion identifies a potential "discrepancy" in the various documents memorializing the transactions. *See* Mot. Dismiss 2–3, ECF 14. Plaintiffs' allegation as to the number of shares it owns is assumed to be true and these Findings and Recommendations do not conclusively determine plaintiffs' ownership stake or that a dispute over the actual number exists.
[3] Compl. ¶¶ 9, 12, 27, ECF 1.

2 – FINDINGS AND RECOMMENDATIONS

Mot. Dismiss 3–7, ECF 14 (describing a "Securities Subscription Agreement" and a "Private Placement Agreement"); Opp'n Mot. Dismiss 12–14, ECF 18 (describing a "Founder Share Subscription Agreement" and a "Private Placement Subscription Agreement").[4] The complaint does not make clear which portion of Greenland's shares are controlled by which subscription agreement, and only references and attached the Private Placement Subscription Agreement.[5] Thus, the complaint seems to allege that the Private Placement Subscription Agreement is the only subscription agreement to consider in analyzing plaintiffs' claims.[6]

The Private Placement Subscription Agreement places a restriction on Greenland's shares as follows:

> THESE SECURITIES (i) HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), AND THESE SECURITIES MAY NOT BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED EXCEPT
> . . . PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT FILED UNDER THE SECURITIES ACT, . . . [or] PURSUANT TO AN EXEMPTION FROM REGISTRATION PROVIDED BY RULE 144 UNDER THE SECURITIES ACT (IF AVAILABLE).[7]

Further, the restriction provides:

> THE SECURITIES REPRESENTED BY THIS CERTIFICATE ARE SUBJECT TO AN AGREEMENT BETWEEN GOLDEN PATH ACQUISITION CORPORATION AND GREENLAND ASSET MANAGEMENT CORPORATION AND MAY ONLY BE OFFERED, SOLD, TRANSFERRED, PLEDGED OR OTHERWISE DISPOSED DURING THE TERM OF THE LOCKUP PURSUANT TO THE TERMS SET FORTH THEREIN.[8]

---

[4] *See also* Schecter Am. Decl., Ex. A (Securities Subscription Agreement), ECF 16-1; Compl., Ex. A (Private Placement Subscription Agreement), ECF 1-1.
[5] Compl., Ex. A, ECF 1-1.
[6] *See* Compl. ¶¶ 9–11, ECF 1.
[7] Compl., Ex. A at 6, ECF 1-1.
[8] *Id.*

3 – FINDINGS AND RECOMMENDATIONS

Plaintiff Peace Asset Management acquired 380,000 shares of MicroCloud for a finding fee in connection with MicroCloud's initial public offering.[9] These shares are also unregistered and restricted.[10] However, the complaint is unclear whether Peace Asset Management's shares are subject to one of the subscription agreements referenced above or at all.

Under the terms of a "Registration Rights Agreement" that also applies to Greenland's shares, Greenland has the right to "make a written demand for registrations" of its shares.[11] Greenland has repeatedly demanded that MicroCloud register the shares with the Securities and Exchange Commission ("SEC") but, according to the complaint, "MicroCloud has completely ignored all five requests and refused to register Greenland's shares so that they may be marketable."[12]

Greenland then attempted to have the restrictions removed under SEC Rule 144[13] by "obtain[ing] a legal opinion from a reputable securities attorney to establish that it has satisfied all the requirements under Rule 144 to invoke the exemption" and delivering that opinion to MicroCloud's "transfer agent," which at the time was a company called VStock.[14] VStock apparently agreed with Greenland's legal opinion and "forwarded Greenland's request to MicroCloud to obtain its concurrence in removing" the restrictions.[15] After receiving the request,

---

[9] Compl. ¶ 11; *see also* Compl., Ex. B at 1, ECF 1-2.
[10] *See* Compl., Ex. B at 2, ECF 1-2.
[11] *See* Compl. ¶¶ 16, 27–35, ECF 1; *id.*, Ex. C at 1, 3, 5–6.
[12] Compl. ¶ 30, ECF 1.
[13] Neither party provides any background or analysis about SEC Rule 144, thus the discussion here about plaintiffs' attempt use this rule to allow them to sell their shares on the public market necessarily relies on the broad descriptions provided the parties of how the process unfolded. These Findings and Recommendations do not address what Rule 144 requires, what process must be followed to invoke it, or whether plaintiffs' attempt to do so complied with any applicable procedural or substantive requirements.
[14] Compl. ¶¶ 33–34, ECF 1.
[15] *Id.* ¶ 34.

MicroCloud "terminated VStock as [MicroCloud's] transfer agent" and hired defendant as the replacement.[16] Greenland submitted to defendant a new request to remove the restrictions under Rule 144 that included another opinion from a securities attorney who concluded that the restriction should be removed; defendant forwarded the request to MicroCloud, who again refused to remove the restrictions, and defendant denied plaintiffs' request.[17]

Plaintiffs then brought this suit against defendant for "refus[ing] to remove the restrictive legend" on their shares, and for "fail[ing] to apply its own independent legal analysis to determine if Greenland meets the conditions under SEC Rule 144."[18] Plaintiffs allege that their inability to sell these shares in the public market because of the restrictions has cost them over $17.5 million in unrealized sale proceeds.[19] And though not directly relevant to the claims here, Greenland and MicroCloud are currently (at least at the time of this writing) embroiled in competing lawsuits in New York state over the shares and their restrictions.[20]

Defendant moves to dismiss the complaint for failure to state a claim on several grounds, most prominently that the agreements by which plaintiffs obtained their shares provide that MicroCloud has the "sole discretion" regarding whether to the remove the transfer restrictions on the shares, whether through registration or via Rule 144. *See* Mot. Dismiss 1–2, ECF 14. Thus,

---

[16] *Id.* ¶ 35.
[17] *Id.* ¶ 42–44.
[18] *Id.* ¶ 45.
[19] *Id.* ¶ 53.
[20] *See* Schecter Am. Decl., Ex. C at 1, ECF 16-3; *id.*, Ex. 7 at 1–4, ECF 16-7. The existence of a state court lawsuit based on a court docket or a filed complaint is subject to judicial notice. *See United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) (taking judicial notice of court records pursuant to Federal Rule of Evidence 201(b)(2), which permits judicial notice of a fact that is "not subject to reasonable dispute in that it is . . . (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned"); *see also* Opp'n Mot. Dismiss 18, ECF 18 (objecting to defendant's citation to the "New York Litigation Materials").

5 – FINDINGS AND RECOMMENDATIONS

defendant contends that it did not have an independent duty under Oregon's version of U.C.C. Article 8, codified at O.R.S. 78.010 *et seq.*, or Oregon common law to remove the restrictions on the shares without MicroCloud's consent. *Id.*

## II. Motion to Dismiss Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the court to examine whether the complaint contains sufficient factual allegations to show that the pleader is entitled to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing FED. R. CIV. P. 8(a)(2)). While a complaint need not contain detailed factual allegations, "formulaic recitation[s] of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement" are not sufficient. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In the absence of a cognizable legal theory or sufficient facts to support a cognizable legal theory, the claim should be dismissed. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). To survive a motion to dismiss, the plaintiff must plead facts sufficient for the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). In addition to the factual allegations in the complaint, the court may consider documents that are attached to or incorporated by reference in the complaint, where the parties do not contest the authenticity of those documents, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

**III.    O.R.S. 78.4010 Claim**

The primary focus of defendant's motion is that plaintiffs cannot plead a claim under O.R.S. 78.4010 for defendant's refusal to register the transfer of, or remove the restrictive legend from, plaintiffs' shares because the statute only imposes a duty to do so if seven preconditions are satisfied, and plaintiffs' complaint does not allege that all the statutory conditions were met. *See* Mot. Dismiss 11–17, ECF 14.[21] O.R.S. 78.4010 is part of Oregon's version of Article 8 of the Uniform Commercial Code regarding investment securities. *See* O.R.S. 78.1010. The language in O.R.S. 78.4010 and U.C.C. § 8-401 are essentially identical. Broadly speaking, U.C.C. § 8-401 "se[t] forth several 'statutory conditions' that must be satisfied to trigger a stock issuer's duty to register a transfer of shares or to remove a restrictive legend." *POSCO Energy Co. v. FuelCell Energy, Inc.*, 560 F. Supp. 3d 747, 755 (S.D.N.Y. 2021).[22] To state a claim under U.C.C. § 8-401, the plaintiff must allege that the shares were presented to the issuer "with a request to register transfer" and that "seven additional conditions outlined in the statute are met."

---

[21] The Private Placement Subscription Agreement and the Registration Rights Agreement concerning plaintiffs' shares are governed by New York law. *See* Compl., Ex. A at 8, ECF 1-1, *id.*, Ex. C at 11, ECF 1-3. Plaintiffs' complaint, though, alleges violations of Oregon law and defendant's motion exclusively analyzes the claims as if Oregon law applies. These Findings and Recommendations assume based on the parties' apparent acquiescence that Oregon law controls.
[22] It should be noted that U.C.C. 8-401 and O.R.S. 78.4010 only refer to a "request to register transfer" and the duty to "register transfer of an uncertificated security." *E.g.*, O.R.S. 78.4010(1). Several courts have interpreted "[t]he phrase 'request to register transfer' . . . [to apply] to a request to remove a restrictive legend from a person's shares, equally with its more obvious object of a request to register a transfer of shares from one person to another." *Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 130 Nev. 801, 808 (2014); *see also Bender v. Memory Metals, Inc.*, 514 A.2d 1109, 1115 (Del. Ch. 1986). That view is not necessarily unanimous. *See Steranko v. Inforex, Inc.*, 5 Mass. App. Ct. 253, 274 (1977) ("[W]e do not agree that the bank's refusal to remove the restrictive legends from [the plaintiff's] shares qualifies as a refusal to 'register a transfer' under the terms of § 8-401(2)[.]"); *see also Bender*, 514 A.2d at 1115 n.8 (criticizing *Steranko*). These Findings and Recommendations assume, without deciding, that the Oregon Supreme Court would follow the apparent majority of courts in interpreting O.R.S. 78.4010 to encompass a request to remove a restrictive legend because the parties here do not contest that point. *See* Mot. Dismiss 11–16, ECF 14.

7 – FINDINGS AND RECOMMENDATIONS

*Occidental Petroleum Corp. v. Wells Fargo Bank, N.A.*, 573 F. Supp. 3d 1161, 1172 (S.D. Tex. 2021) (quoting *POSCO Energy*, 560 F. Supp. 3d at 755); *see also Guilfoyle*, 130 Nev. at 808 ("If any of the preconditions do not exist, there is no duty to register transfer.") (quoting U.C.C. § 8–401 cmt. 1 (1994)) (additional citations omitted).[23] O.R.S. 78.4010(1) contains the same seven conditions.

One of these statutory conditions is that the transfer must "not violate any restriction on transfer imposed by the issuer." O.R.S. 78.4010(1)(e). Here, as plaintiffs allege, the shares were subject to such a restriction and plaintiffs allege that they cannot sell their shares "in the public market" unless MicroCloud registers the shares or the restrictions are removed under SEC Rule 144. Compl. ¶ 27, ECF 1. And as described above, MicroCloud has so far ignored or refused plaintiffs' request to remove the restrictions on the shares. *See id.* ¶¶ 29–34. The question whether MicroCloud acted unreasonably or wrongly in refusing plaintiffs' numerous requests to register the shares or otherwise consent to having the restrictive legend removed is obviously not at issue here; MicroCloud is not a party to this suit. Instead, plaintiffs seek to hold defendant liable under O.R.S. 78.4010 for its refusal to remove the restrictive legends without MicroCloud's consent. *See id.* ¶¶ 36–41.

O.R.S. 78.4010(1)(e) states, in relevant part:

> (1) If a certificated security in registered form is presented to an issuer with a request to register transfer or an instruction is presented to an issuer with a request to register transfer of an uncertificated security, the issuer shall register the transfer as requested if:
>
> . . .

---

[23] It is well-established that "the legislative intent to make the UCC a uniform code makes relevant the decisions of other courts that have examined" questions about how to interpret and apply the U.C.C. *U.S. Nat. Bank of Oregon v. Boge*, 311 Or. 550, 564 (1991) (citation omitted).

> (e) The transfer does not violate any restriction on transfer imposed by the issuer in accordance with ORS 78.2040[.][24]

O.R.S. 78.4010(1)(e). As an initial matter, although the statute expressly refers to "an issuer" of securities (here, MicroCloud), defendant does not dispute that both an issuer of securities and a transfer agent (here, defendant) both may have liability under O.R.S. 78.4010 in certain circumstances. *See* Reply 3, ECF 20; Opp'n Mot. Dismiss 4–8, ECF 18 (asserting that defendant "independently owes the same duty to shareholders that MicroCloud does") (some formatting omitted). O.R.S. 78.4070 provides that "[a] person acting as . . . transfer agent . . . has the same obligation to the holder or owner of a certificated or uncertificated security with regard to the particular functions performed as the issuer has in regard to those functions." But when it comes to the "particular function" of registering a transfer, comment 1 to O.R.S. 78.4010 makes clear that the duty to register a transfer "exists only if certain preconditions exist" and "[i]f any of the preconditions do not exist, there is no duty to register transfer." As noted above, the precondition here at subpart (e) has not been met because plaintiffs' shares were subject to a transfer restriction imposed by MicroCloud. *See* Compl. ¶ 27, ECF 1 ("Plaintiffs' shares in MicroCloud are restricted shares[.]").

The statute does not on its face impose any duty on the transfer agent to conduct, in plaintiffs' words, an "independent legal analysis" to determine whether the issuer's reasoning for refusing to lift the restrictions on the shares was wrongful. *See* Compl. 2, ECF 1 (alleging that defendant "refused to deploy its own independent legal analysis to remove the restrictive legends"). Nor have plaintiffs provided any authority supporting the proposition that a transfer agent has such a duty, and there are very few decisions from either state or federal courts

---

[24] O.R.S. 78.2040 provides that a restriction is only effective if it is "noted conspicuously on the security certificate" or the owner of the security has otherwise "been notified of the restriction." Plaintiffs do not dispute that the restrictions on the shares at issue here satisfy this requirement.

discussing the duty of a transfer agent in the face of an issuer's refusal to consent to the removal of a restrictive legend.

The plaintiff in *Fink v. Atlas Stock Transfer Corp*, the closest factual analog to the present case that either party has provided, sued a transfer agent who, like defendant here, refused to remove a restrictive legend without the issuer's consent. No. B215103, 2010 WL 4887179, at *2 (Cal. Ct. App. Dec. 2, 2010); *see also* Mot. Dismiss 13–14, ECF 14 (citing *Fink*). The California Court of Appeals ruled that the plaintiff did not state a claim under California's version of U.C.C. § 8-401 because "[t]he complaint acknowledge[d] a condition precedent for registering the transfer of uncertificated stocks and on its face concedes the condition has yet to be satisfied," and thus "no duty or obligation arises for the transfer agent to register the transfer of stock or to issue new stock certificates without the legend." *Id.* at *5. The complaint alleged that the transfer agent "required an opinion letter from [the issuer] as a condition precedent" to remove the restrictive legend but that "such a letter was not forthcoming[.]" *Id.* at *6. Thus, the transfer agent was "justified in refusing to make a requested transfer until it has received an explanation or showing the proposed transfer" would be "rightful." *Id.* at *6.

In part, the California Court of Appeals relied on guidance from the Securities and Exchange Commission regarding Rule 144, and described the typical process that must be followed when a holder wishes to sell restricted shares to the public:

> Even if you have met the conditions of Rule 144, you can't sell your restricted securities to the public until you've gotten the legend removed from the certificate. [The] transfer agent won't remove the legend unless you've obtained the consent of the issuer—usually in the form of an opinion letter from the issuer's counsel—that the restricted legend can be removed. Unless this happens, the transfer agent doesn't have the authority to remove the legend and execute the trade in the market place[.]

10 – FINDINGS AND RECOMMENDATIONS

*Id.* (quoting U.S. Securities and Exchange Commission, *Rule 144: Selling Restricted and Control Securities* at http:// www.sec.gov/investor/pubs/rule144.htm); *see also* Mot. Dismiss 14–15 (citing same SEC guidance). The instant case is in line with SEC guidance on Rule 144 and with *Fink*; plaintiffs' complaint admits that their shares are "restricted" and they cannot sell the shares in the public market unless (1) MicroCloud registers the shares with the SEC or (2) the restrictions are removed under SEC Rule 144. Compl. ¶ 27, ECF 1.

    The complaint also alleges that MicroCloud has refused to register the shares, and that MicroCloud has "stonewalled" plaintiffs' efforts to utilize Rule 144 to get the shares registered. *Id.* ¶¶ 30–31. Plaintiffs have not shown how these alleged facts give rise to a duty on the part of defendant to remove the restrictive legend on plaintiffs' shares without MicroCloud's consent. And while it is true, as plaintiffs point out, that *Fink* is an unpublished decision, *see* Opp'n Mot. Dismiss 17–18, ECF 18, this court is not prohibited from considering it, and the analysis in *Fink* is useful given its similarity to the present case and the paucity of relevant case law from any court regarding U.C.C. § 8-401 and how it should apply to the facts alleged in plaintiffs' complaint. *See Emps. Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003) (explaining that courts "may consider unpublished state decisions, even though such opinions have no precedential value") (citing *Nunez v. City of San Diego,* 114 F.3d 935, 943 n.4 (9th Cir.1997)); *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1021 (9th Cir. 2024) (relying on *Emps. Ins. of Wausau* for citing to unpublished California Court of Appeals' decision); *Ovitz v. Chartis Prop. Cas. Co.*, No. 2:15-cv-03916-PSG-PLA, 2015 WL 12746209, at *4 (C.D. Cal. Sept. 14, 2015) ("While [the relied upon case] is an unpublished opinion, such opinions still may provide . . . valuable insight as to how [contract] language might reasonably be interpreted by a court.").

11 – FINDINGS AND RECOMMENDATIONS

Other cases, while not directly applicable to plaintiffs' claims here, echo *Fink*'s understanding of the duties a transfer agent has under U.C.C. § 8-401 when the issuer does not consent to the removal of a restrictive legend. *See FSR, Inc. v. Korsair Holdings, A.G.*, No. 1:18-cv-11393-ER, 2020 WL 8991778, at *3 (S.D.N.Y. Mar. 30, 2020) ("Here, the Certificate contains a restrictive legend that prevents the shares represented thereby from being freely sold in open market transactions. Further, the [SEC] has taken the position that removal of a restrictive legend from stock certificates is a matter solely within the discretion of the issuer of the certificates. Only a transfer agent can remove a restrictive legend, and only with the consent of the issuer, usually in the form of an opinion letter from the issuer's counsel to the transfer agent.") (internal citations omitted); *S.E.C. v. Spencer Pharm. Inc.*, 57 F. Supp. 3d 127, 135 (D. Mass. 2014) ("To remove the restrictive legend barring free transfer of unregistered stock, a transfer agent must receive consent of the stock's issuer, usually through an opinion letter sent by the issuer's counsel. Removal of this restrictive legend is the 'first step in, and a necessary incident to, the contemplated transfer of such stock.' ") (quoting *Kenler v. Canal Nat'l Bank,* 489 F.2d 482, 485 (1st Cir. 1973)) (alteration omitted); *Guilfoyle*, 130 Nev. at 811 (citing SEC Rule 144 guidance).

Plaintiffs alternatively attempt to distinguish this case by asserting that the restrictive legend at issue here does not expressly state that the issuer has the "sole discretion" to consent to the removal of the legend, but instead that discretion is only "contractual in nature" because it is provided in the Private Placement Subscription Agreement governing plaintiffs' shares. Opp'n Mot. Dismiss 11, ECF 18. But the Private Placement Subscription Agreement is incorporated by reference into the shares' restrictive legend and its terms dictate that Greenland cannot sell the shares on the public market without MicroCloud's consent. *See* Compl., Ex. A at 4, 6, ECF 1-1

12 – FINDINGS AND RECOMMENDATIONS

(Sections 2.10 and 4.1, regarding the shares' restrictive legend). Sections 2.10 and 2.13 of that agreement state that the shares cannot be sold, pledged, or transferred unless, among other things, MicroCloud registers the shares or the transfer is made under an exemption that "in the opinion of counsel for [MicroCloud], is available." Compl., Ex. A at 4, ECF 1-1. And Section 4.3 of that agreement states that MicroCloud "shall refuse to register any transfer of the Securities, if *in the sole judgment of [MicroCloud]* such purported transfer would not be made (i) pursuant to an effective registration statement filed under the Securities Act, or (ii) pursuant to an available exemption from the registration requirements of the Securities Act." *Id.* at 7 (emphasis added). Plaintiffs do not provide any authority for the argument that these incorporated "contractual" limitations on the removal of the restrictive legend are somehow different than a limitation that is expressly written into the legend itself. *See* Opp'n Mot. Dismiss 11, ECF 18.

For all of these reasons, plaintiffs' complaint fails to state a claim for relief against defendant under O.R.S. 78.4010.

## IV. Federal Securities Law Claims

Defendant also moves to dismiss plaintiffs' claim asserting a "[v]iolation of 15 U.S.C. §§ 77A-77BBB, 78A-78HH," *see* Compl. ¶¶ 79–84, on the basis that plaintiffs "do not articulate which specific provision of the federal securities laws Defendant has violated[.]" Mot. Dismiss 12 n.22, ECF 14. Plaintiffs did not respond to this argument and have therefore conceded it. *See Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089 (D. Or. 2021) ("A plaintiff who 'makes a claim' in a complaint 'but fails to raise the issue in response to a defendant's motion to dismiss' that claim, 'has effectively abandoned [that] claim.' ") (quoting *Walsh v. Nevada Dep't of Hum. Res.*, 471 F.3d 1033, 1037 (9th Cir. 2006)).

V.      **Oregon Common Law Claims**

Defendant also moves to dismiss plaintiffs' claims for negligence and conversion under Oregon law. *See* Mot. Dismiss 17–20, ECF 14; Compl. ¶¶ 55–66, ECF 1. Defendant asserts that Oregon common law does not recognize liability for transfer agents for mere "nonfeasance" and that, in any event, U.C.C. Article 8 displaces Oregon common law causes of action for "nonfeasance" such as negligence. *Id.* (collecting cases). Again, plaintiffs do not respond to these arguments and have therefore conceded the points. *See* Opp'n Mot. Dismiss 15–16, ECF 18.[25] Instead, plaintiffs assert that a violation of O.R.S. 78.4010 is "negligence per se." *Id.* But as explained above, plaintiffs' allegations fail to state a claim under that statute and therefore plaintiffs have failed to allege a violation of an Oregon statute that would sustain a negligence claim on that basis.

Alternatively, plaintiffs assert that they have stated a claim for conversion because they "are entitled to free transfer of their shares under Rule 144 and [d]efendant . . . is duty-bound to satisfy [plaintiffs'] request to register transfer under [the] UCC." Opp'n Mot. Dismiss 16, ECF 18. But as discussed above, under the Private Placement Subscription Agreement incorporated into the complaint, plaintiffs' ability to transfer the shares is restricted and non-party MicroCloud has the "sole discretion" to remove that restriction. Thus, the complaint fails to state a claim for conversion because plaintiffs have not alleged that defendant interfered with their right to sell the shares. *See Mossberg v. Univ. of Oregon*, 240 Or. App. 490, 494 (2011) ("To state a claim for conversion, a party must establish the intentional exercise of dominion or control over a chattel

---

[25] Because the parties have not fully developed this argument, these Findings and Recommendations do not analyze or determine whether Article 8 of the U.C.C. actually displaces Oregon common law claims for negligence or conversion.

that so seriously interferes with the right of another to control it that the actor may justly be required to pay the full value of the chattel.") (citation omitted).

## RECOMMENDATIONS

Defendant's Motion to Dismiss Pursuant to FRCP 12(b)(6) (ECF 14) should be granted because plaintiffs have failed to allege facts showing that defendant had a duty under O.R.S. 78.4010, Oregon common law, or unspecified portions of federal securities law, to remove the restrictive legend from plaintiffs' shares without consent from the shares' issuer, non-party MicroCloud.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Thursday, October 17, 2024. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED October 3, 2024.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge